ALBANY,
February, 1809.

Thompson
v.
Robertson.

S. THOMPSON *against* ROBERTSON and BROWNE.

THIS was an action brought by the plaintiff, as indorsee and holder of a bill of exchange, against the defendants, as payees and immediate indorsers to the plaintiff. The declaration was on the second of the set of exchange, dated at *Barbadoes*, 9th *July*, 1804, for 700*l.* drawn by *Law Mudie* on *Phyn Inglis & Co. London*, at 60 days sight. The bill was indorsed by the defendants in blank, after which was the following indorsement: " Pay to *James Palmer*, to be placed to the credit of. *John M'Call*, or order. *James Thompson.*" The cause was tried at the sittings in *New-York*, in *December*, 1806, before Mr. Justice *Livingston.* It was admitted by a written agreement between the parties, that the principal of the bill had been paid by the defendants to the plaintiff, without prejudice to either party, as to the question of damages, to recover which was the only object of the present suit. The *first* of the set of exchange was protested for non-payment, and due notice of the non-acceptance and non-payment of the bill was given to the defendants. At the time of the protest for non-payment the bill was held by *James Palmer*, who afterwards indorsed it, but his name was erased on the bill produced. At the trial, the plaintiff read in evidence the first of exchange, on which were the same indorsements as on the other, all of which were erased, except the first made by the defendants to the plaintiff.

It was proved by the defendants, (though the evidence was objected to, but admitted,) that in *February*, 1804, and before that time, *John M'Call* was a merchant in *London*, and held a correspondence with *James Thompson*, of *New-York*, and was in the habit of receiving and executing or-

The person to whom a bill is remitted in payment of a precedent debt, cannot, in case of a protest, recover the 20 per cent. damages from the remitter. A bill was remitted by A. to B. in payment of a precedent debt, and was specially indorsed to B. The bill having been protested for non-payment, B. afterwards indorsed it to C. who paid him the amount. C. struck out all the intermediate indorsements on the bill, and brought his action as a first indorsee against the first indorsers, to recover the amount with damages. It was held, that after the protest, B. was the mere agent of A. in regard to the bill, and ought to have returned it to him; that C. having taken the bill with a full knowledge of the situation of B. must stand in his place, and be entitled to the same rights, and no more; and could not, therefore, recover the 20 per cent. damages; and that

A. the person who remitted the bill, was the only person entitled to damages. Where a bill is first indorsed in blank, and afterwards specially indorsed, whether the subsequent holder can strike out the special indorsement, and bring his action as a first indorsee ? *Quere.*

ALBANY,
February, 1809.

Thompson
v.
Robertson.

ders given to him for merchandize, and that prior to *February*, 1804, in the usual course of business, he received orders from *J. Thompson*, to ship to him, for his account and risk, a quantity of hosiery ; that *M'Call* declining to execute the order, delivered it to *James Palmer*, a merchant in *London*, to be executed ; that *Palmer*, in pursuance of the order, shipped to *J. Thompson* the goods desired, which were received by *M'Call*, who put them on board a ship for *New-York*, and forwarded the invoices to *J. Thompson*, with a letter of advice to him, to remit the amount to *Palmer*. The goods were shipped by *Palmer* on the credit of *J. Thompson*, and an account between them, with a balance stated, was exhibited in evidence. In a letter, dated the 20th *August*, 1804, *Palmer* pressed *J. Thompson* for the payment of the balance due on the goods. On the 31st *October*, 1804, *Palmer* wrote to *J. Thompson*, acknowledging the receipt of the bill of exchange for 700*l.* which he agreed to place to the credit of *J. Thompson*, when paid, mentioning that it was not accepted, and that the drawees desired it might be presented again, after the next packet arrived. On the 30th *April*, 1805, *Palmer* wrote to *J. Thompson*, that being put to inconvenience on account of the nonpayment of the bill, he had disposed of it to a gentleman in *London*, and that as *J. Thompson* would not suffer any more inconvenience from this disposal of it, than if it had been a good bill, he could not complain, &c.

The judge charged the jury, that the plaintiff was not entitled to recover the damages on the bill from the defendants that the bill having been remitted by *J. Thompson* to *Palmer*, in payment of a precedent debt, and having refused to credit *J. Thompson* with the bill till it was paid, he could be considered only as holding it as the agent of *J. Thompson*, and ought to have returned it to him, as soon as it was dishonoured ; that *Palmer* having negotiated the bill after it was protested for non-payment, the plaintiff had no other rights, than *Palmer* possessed when the bill fell due in his

hands. The jury, therefore, found a verdict for the defendants.

The plaintiff moved to set aside the verdict, for the misdirection of the judge.

*D. A. Ogden*, for the plaintiff. This is a suit against the first indorsers, not against the remitter. Though the bill was limited by the indorsement of *J. Thompson*, yet the first indorsement being in blank, the fair holder may strike out all the intermediate indorsements, and recover as the indorsee of the first indorser.* Admitting, then, that *J. Thompson* remitted the bill to *Palmer*, in payment of a precedent debt, it cannot vary the right of the present plaintiff to the damages, which necessarily follow his right to recover as the first indorsee of the bill. The plaintiff had a right to pay the bill after the protest. Any person, a mere stranger, may pay a bill *supra* protest, for the honour of any party to the bill, and will thereby become entitled to all the rights of the holder.†

* *Chitty*, 103.
261. *Kyd*, 296.
4 *Esp. Rep.* 211.
*Peake's N. P.*
225.

† *Chitty*, 202.
230.

*Colden* and *Hoffman*, contra. As the bill was in the hands of *Palmer* when it became due, whoever received it afterwards, must take it subject to all the equity against the holder. He substitutes himself in the place of the holder.‡ The plaintiff can have no right to recover, if *Palmer* had none, and *Palmer* cannot maintain a suit against *James Thompson*, or either of the parties, for he received the bill not as an indorsee in the course of business, but as a mere agent for *James Thompson*, to whom he was bound to return the bill.

‡ 1 *Caines*, 258.
2 *Caines*, 272.
7 *Term Rep.*
423. 3 *Term Rep.* 82.
2 *Johns. Rep.*
306. 3 *Caines*,
379.

Again, there was a special indorsement to *Palmer*, who had no power to transfer the bill. Though a person who receives a note before it is due, may strike out the intermediate indorsements, he cannot do so, when he takes it after it has become due.

ALBANY,
February, 1809.

Thompson
v.
Robertson.

*1 *Johns. Cas.*
107. 1 *Dallas,*
261. 4 *Dallas,*
155,

Admitting that the plaintiff might recover on the bill, still he is not entitled to the 20 per cent. damages.

In *Kenworthy* v. *Hopkins,** it was decided that where a bill is remitted to a person to discharge a precedent debt, he cannot recover the damages, in case of a protest. The creditor to whom the bill is remitted, must recover interest on his debt, and he ought not to recover the damages also.

When a bill is paid *supra* protest, the person paying it must always show for whose honour it was paid. As no person is designated, it may be presumed to have been paid for the honour of the defendants. If so, the plaintiff cannot recover damages of them.

*Harison,* in reply, observed, that whatever may be the relative rights between *James Thompson* and the holder of the bill, the defendants cannot make any objection ; for they are liable at all events, and must pay. The principal cannot be recovered of one person, and the damages of another. One is the inseparable incident of the other ; they cannot be severed. The case of *Kenworthy* v. *Hopkins* applies only in the case where the person to whom a bill is remitted for a precedent debt, brings his action against the remitter. It is not applicable where a third person is the holder of the bill.

SPENCER, J. delivered the opinion of the court. The case of *Kenworthy* v. *Hopkins,* is an authority for saying, that the person to whom a bill is remitted for the purpose of paying a precedent debt, cannot recover against the remitter, the 20 per cent. damages. I am satisfied that this decision is correct, because in such case, as the bill never was taken in the usual course of trade, the right of the party to whom the bill was remitted, extended only to the receiving the money due, or, in case of non-payment, of returning the bill. It was not his but for special qualified pur-

poses. In the present case the suit is not against the re-
mitting merchant, but the objection comes from indorsers.

This case, then, must turn, not upon any right which the
defendants have to make the objection to the payment of
the damages, but upon the plaintiff's title to them, as against
the defendants. The bill in question having been remitted
at the risk of *James Thompson*, I consider him, in law and
justice, as entitled to the damages, he having encountered
all the hazard and inconvenience of the remittance. There
is no doubt that on the protest of a bill for non-payment,
it may be paid by any one, *supra* protest, for the honour of
the drawer or indorser, and such person thereby acquires all
the rights that the proprietor of the bill had.\* Accordingly
it was ruled by Lord *Kenyon* in the case of *Mestens v.
Winnington,*† that where a bill is so taken up, the party who
does so, is to be considered an indorsee paying full value
for the bill, and as such is entitled to all the remedies to
which an indorsee would be entitled, that is, to sue all the
parties to the bill. In the present case, *James Thompson*,
the remitter of the bill, made a special indorsement, by
which he directed the bill to be paid to *James Palmer*, to be
placed to the credit of *John M'Call* or order. This in-
dorsement the plaintiff, who came by the bill by indorse-
ment from *James Palmer*, and, after it was protested for
non-payment, struck out, and thereby sets up a title as the
immediate indorsee of the defendants, whose indorsement
was in blank. When the plaintiff took this bill, he must
have seen that it was in the possession of *Palmer*, merely
as agent for *James Thompson*, and, in fact, that *Palmer* had
no right to negotiate it. Without giving any opinion upon
the question, whether a person who gets possession of a bill,
at first indorsed in blank, and afterwards specially indorsed,
may strike out such special indorsement, it appears very
evident in this case, that the plaintiff came to the possession
of this bill collusively, and with full knowledge that *Palmer*
had no right to raise money on it: And it is very certain,
that the plaintiff paid the bill for the honour of no one. Un-
der these circumstances, we are satisfied, that the plaintiff has

\* *Chitty*, 162.

† 1 *Esp. Rep.*
112.

ALBANY,
February, 1809.

received all that he is entitled to on the bill; and that, with regard to the 20 per cent. the plaintiff has shown no right to those damages, his payment not being the ordinary payment of a bill *supra* protest, for the honour of the parties on the bill, but evidently in concert with *Palmer* to gain a right to the damages. We, therefore, refuse a new trial.

New trial refused.